**TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellant,**

v.

**TOP OF THE STRIP, INC. d/b/a Top of the Strip, Appellee.**

No. 04–98–00705–CV.

Court of Appeals of Texas,
San Antonio.

April 7, 1999.

Rehearing Overruled May 12, 1999.

W. Reed Lockhoof, Assistant Attorney General, Austin, for Appellant.

Warren Weir, Weir & Alvarado, P.C., San Antonio, for Appellee.

Before CATHERINE STONE, Justice, PAUL W. GREEN, Justice and KAREN ANGELINI, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

### Nature of the case

The Texas Alcoholic Beverage Commission ("TABC") appeals a judgment reversing the TABC's order canceling Top of the Strip's mixed beverage and late hours mixed beverage permits. In the first issue, TABC contends that the trial court lacked jurisdiction to reverse the order. In the second and third issues, TABC argues that the order was supported by substantial evidence and was not arbitrary and capricious.

### Factual background

After a contested hearing, the administrative law judge from the Office of Administrative Hearings wrote a proposal for decision recommending that Top of the Strip's permits be canceled. On March 5, 1998, the TABC entered an amended order canceling the permits. Top of the Strip filed a motion for rehearing on March 13 which was overruled by TABC's second amended order dated March 30. Top of the Strip then appealed the TABC order to the district court. *See* Tex. Alco. Bev. Code Ann. § 11.67(a) (Vernon 1995). Top of the Strip's petition was filed on April 23, 1998. A hearing was held on May 4 and the court denied the relief requested in Top of the Strip's petition.

On May 26, Top of the Strip filed a motion for rehearing which was heard on July 15. Both sides were present at the hearing and the district court found that it had jurisdiction over the case. The court found that the decision of the TABC was not supported by substantial evidence and was arbitrary and capricious. TABC attacks this judgment arguing that the court lacked jurisdiction to hear the case and the TABC order was supported by substantial evidence and was not arbitrary and capricious. The TABC order listed the follow-ing violations as support for cancellation of the permits: (1) an underage girl dancing topless; (2) an adult entertainer soliciting drinks and offering oral sex for hire; (3) an underage customer drinking a beer; and (4) a baggy of marijuana found in a pair of jeans in the backstage dressing room.

### Jurisdiction

■ TABC alleges six reasons that the district court did not have jurisdiction over the case. First, TABC complains that Top of the Strip's motion for rehearing of the TABC order failed to point out errors with particularity and specificity thus waiving any errors asserted in the petition. A timely motion for rehearing is a prerequisite to an appeal in a contested case. *See* Tex. Gov't Code Ann. § 2001.145(a) (Vernon 1999). Further, motions for rehearing must apprise the agency of the claimed errors and allow the agency the opportunity to correct the errors or defend against them. *See Morgan v. Employees' Retirement Sys. of Texas,* 872 S.W.2d 819, 821 (Tex.App.—Austin 1994, no writ) (citing *Suburban Util. Corp. v. Public Util. Comm'n of Texas,* 652 S.W.2d 358, 365 (Tex.1983)). In a motion for rehearing, the complaining party must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency that the complaining party asserts is error and, (2) the legal basis upon which the claim of error rests. *Burke v. Central Educ. Agency,* 725 S.W.2d 393, 397 (Tex.App.—Austin 1987, writ ref'd n.r.e.). However, the motion for rehearing need not comply with the "technical niceties of pleadings and practice required in court trials." *Suburban,* 652 S.W.2d at 364.

■ In its motion for rehearing, Top of the Strip listed ten reasons to grant the motion for rehearing. In paragraphs three and four, Top of the Strip complained that the order and amended order and its particular findings were not supported by substantial evidence and were arbitrary and capricious. In paragraphs

five and six, Top of the Strip alleged that the conduct described in the findings did not violate the statute and thus TABC assumed statutory authority that it did not have. In paragraphs seven, eight and nine, Top of the Strip contended that the findings imposed responsibility upon it for the conduct of independent contractors, other persons, and law enforcement officials over which Top of the Strip either had no responsibility or no knowledge of their conduct. In paragraph ten, Top of the Strip maintained that scientific evidence concerning a canine's drug search was presented without proper predicate and without the substance being introduced into evidence.

Although the motion for rehearing does not attack each factual finding, Top of the Strip complained that the findings were imposing liability on it for the conduct of others whose actions were beyond its control. The motion directly attacked TABC's conclusion that Top of the Strip could not disclaim responsibility for its agents, servants, or employees. Thus, Top of the Strip attacked the findings of responsibility and argued that it was not legally responsible for the actions of others. Therefore, we find that the motion for rehearing was sufficient to apprise TABC of the alleged errors and jurisdiction was not lacking on that basis.

■ Second, TABC contends that Top of the Strip failed to file its petition in district court within thirty days of the final order as required by statute. *See* Tex. Alco. Bev.Code Ann. § 11.67(b)(1) (Vernon 1995); Tex. Gov't Code Ann. § 2001.176(a) (Vernon 1999). TABC alleges that the final order was the amended order filed on March 19. However, Top of the Strip points out that TABC's second amended order was filed on March 30. Top of the Strip filed its petition on April 23 which was within thirty days of the second amended order. Thus, Top of the Strip timely filed its petition for judicial review and invoked the jurisdiction of the district court.

■ Third, TABC alleges that Top of the Strip failed to have the petition heard within ten days of filing which caused the court to lose jurisdiction over the case. According to section 11.67, an appeal from the cancellation of a permit shall be tried before a judge within 10 days from the date it is filed. Tex. Alco. Bev.Code Ann. § 11.67(b)(2) (Vernon 1995). In this case, the petition was filed on April 23 and the hearing was held on May 4 which was eleven days after the case was filed. However, the tenth day fell on a Sunday.

The Texas Supreme Court has held that the time for an appeal endures for ten days and any proceedings occurring beyond that time are void. *Cook v. Spears*, 524 S.W.2d 290, 291–92 (Tex.1975) (hearing held 43 days after case filed was void). Top of the Strip contends that the hearing was held within the required ten days because May 3 was a Sunday and under the Code Construction Act it had until the next day that was not a Saturday, Sunday, or legal holiday to have the case tried. *See* Tex. Gov't Code Ann. § 311.014(b) (Vernon 1998).[1] The Code Construction Act applies to each provision of the Alcoholic Beverage Code except as expressly provided. Tex. Alco. Bev.Code Ann. § 1.02 (Vernon 1995). TABC contends that section 11.67(b)(2) excepts the ten day period from the ordinary rules applicable to civil suits. We do not agree. Section 11.67(b)(2) simply states that the case must be tried within 10 days of being filed and does not address the situation of the tenth day falling on a Saturday, Sunday, or legal holiday. Further, none of the cases cited by TABC deal with the tenth day falling on a Saturday, Sunday, or legal holiday. We find that the trial court did

---

1. Section 311.014 provides:

(a) In computing a period of days, the first day is excluded and the last day is included.

(b) If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday.

not lose jurisdiction before it heard the case because the tenth day was a Sunday and the case was heard on Monday.

■ Fourth, TABC contends that the district court's order was void because it was signed after the expiration of the ten days. Although the court rendered its decision on May 4, the order was not signed until May 11. TABC cites cases for this proposition but the cases only hold that a hearing held after 10 days was void and do not address the issue of an order signed after the case was tried. *See Cook v. Walker*, 529 S.W.2d 762, 763 (Tex.1975) (right to appeal lost after expiration of ten days); *Spears*, 524 S.W.2d at 290–92. In fact, the Corpus Christi Court of Appeals found that the court was required to have the hearing within ten days but was not required to sign the judgment during that period. *Fox v. Medina*, 848 S.W.2d 866, 870 (Tex.App.—Corpus Christi 1993, no writ). Further, article 11.67(b)(2) clearly states that the case shall be *tried* before a judge within ten days of the date of filing. We find the fact that the order was signed after the expiration of the ten days does not render the order void.

■ Fifth, TABC contends that the court did not have in personam jurisdiction over it because it was not properly served the citation and petition. Service of process gives the court proper personal jurisdiction over the parties. *Cockrell v. Estevez*, 737 S.W.2d 138, 140 (Tex.App.—San Antonio 1987, no writ); *Texas Alcoholic Beverage Comm'n v. Wilson*, 573 S.W.2d 832, 835 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Top of the Strip served TABC by serving the Secretary of State on April 30. However, TABC points out that a copy of the petition must be served

on the state agency. *See* Tex. Gov't Code Ann. § 2001.176(b)(2) (Vernon 1999). It is uncontroverted that TABC was not properly served with process when the court heard the case on May 4 and entered the order on May 11.[2] Although the court had potential personal jurisdiction over TABC, personal jurisdiction was not properly activated because TABC was not served with process. *See Graham v. Graham*, 733 S.W.2d 374, 377 (Tex.App.—Amarillo 1987, writ ref'd n.r.e.) (finding potential jurisdiction must be activated through service of process for court to exercise its jurisdiction power).

However, Top of the Strip properly served TABC with process on June 12 and TABC filed an answer. Top of the Strip filed a motion for rehearing of the May 11 order in which the court had denied Top of the Strip any relief. TABC appeared through counsel at the July 15 hearing and the court granted Top of the Strip's motion for rehearing and reversed the TABC's order. Because the TABC had been properly served and had filed an answer before the July 15 hearing, the trial court did have in personam jurisdiction over the TABC at the time of the July 15 hearing. Therefore, we find that the lack of personal jurisdiction over TABC at the time of the May 4 hearing did not cause the trial court to lose jurisdiction over the case.[3]

■ Sixth, TABC argues that the district court had no jurisdiction to consider Top of the Strip's motion for rehearing. TABC argues that the trial court's jurisdiction expires after ten days. *See Fox*, 848 S.W.2d at 870; *McBeth v. Riverside Inn Corp.*, 593 S.W.2d 734, 735–36 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). In *McBeth*, the plaintiff

2. Top of the Strip's counsel admitted at oral argument that the court did not have in personam jurisdiction over TABC at the May 4 hearing.

3. We note that an appeal from a TABC order must be tried within ten days of filing. Tex. Alco. Bev. Code Ann. § 11.67(b) (Vernon 1995). The hearing was held within the ten days and

thus the appeal was within the district court's jurisdiction. *See El–Kareh v. Texas Alcoholic Beverage Comm'n*, 874 S.W.2d 192, 195 (Tex. App.—Houston [14th Dist.] 1994, no writ). Because Top of the Strip was not required to secure a judgment within ten days of filing, the May 11 order does not divest the court of jurisdiction.

sought review of a commission order. The case was tried within the ten days but, after the ten days had expired, the court granted the plaintiff's motion for new trial and entered a judgment reversing the TABC's order. *Id.* at 735. The court of appeals found that the filing of a motion for new trial and any order granting or denying the motion was part of the trial of an appeal from an order of the TABC. *Id.* at 736. The court then stated that the right to a trial on appeal from a TABC order was exhausted ten days after the appeal was filed. Thus, the court lacked authority to grant the motion for new trial. *Id.* In *Fox*, the court of appeals found that the court could sign the judgment more than ten days after the case was filed. *Fox*, 848 S.W.2d at 870. The court stated "[o]nce the 10–day period lapses, however, the trial court is powerless to entertain motions, hold proceedings, or take any action other than signing the written judgment...." *Id.*

However, the Fourteenth Court of Appeals takes issue with the analysis in *McBeth.* *See El–Kareh v. Texas Alcoholic Beverage Comm'n*, 874 S.W.2d 192, 195–96 (Tex.App.—Houston [14th Dist.] 1994, no writ). In *El–Kareh*, the appellee argued that the appellant failed to timely perfect his appeal to the court of appeals because the filing of a motion for new trial was a nullity under the holding in *McBeth* and, therefore, did not extend the appellate timetable. *Id.* at 195. The court acknowledged that the *McBeth* case required a motion for new trial to be ruled on within ten days of filing. However, the court contended that the holding in *McBeth* was at odds with section 2001.901 of the Government Code which states that "[a] party may appeal a final district court judgment under this chapter in the manner provided for civil actions generally." *Id.*; Tex. Gov't Code Ann. § 2001.901(a) (Vernon 1999). The court in *El–Kareh* also attacked the holding in *McBeth* which considered the trial of the appeal from an order of the TABC to include the grant or denial of a motion for new trial. According to the

Fourteenth Court of Appeals, "[o]nce the appeal was safely within the jurisdiction of the district judge, the usual rules of civil procedure became applicable." *El–Kareh*, 874 S.W.2d at 196. The court concluded that *McBeth* does not apply to any matters beyond the perfection of an appeal from the administrative body to the district court. *Id.* Thus, the district court had jurisdiction over the case as long as the hearing was held within the required ten days. In *El–Kareh*, the court found that the appellant's motion for new trial was not a nullity and expanded the appellate timetable to perfect the appeal. *Id.*

In our case, TABC and Top of the Strip both contend that the language in *El–Kareh* supports their positions. TABC contends that the only legal effect of Top of the Strip's motion for rehearing was to extend its appellate timetable. Top of the Strip contends that the language in *El–Kareh*, that once the appeal was safely in the district court's jurisdiction the usual rules of civil procedure apply, means that Rule of Civil Procedure 329(b) extends the court's plenary power and gives the court jurisdiction to rule on the motion for rehearing. Top of the Strip also points to the following language in article 11.67(b): "... [t]he rules applicable to ordinary civil suits apply, with the following exceptions, which shall be construed literally...." Tex. Alco. Bev.Code Ann. § 11.67(b) (Vernon 1995). The exceptions include that the appeal from the agency order must be filed within thirty days and the case must be tried within ten days of filing. *Id.* § 11.67(b)(1)–(2).

We agree with the reasoning in *El–Kareh* and find that once the court has jurisdiction the rules of civil procedure apply which would include Rule 329b. Rule 329b gives the trial court plenary power to grant a new trial, vacate, modify, correct, or reform the judgment within thirty days. Tex.R. Civ. P. 329b. Therefore, the court had jurisdiction to rule on Top of the Strip's motion for rehearing.

Having found that the court had jurisdiction over the case, we overrule TABC's first issue.

### Substantial evidence

 In the second issue, TABC contends that its order is supported by substantial evidence. The district court's review of a TABC order is based on the substantial evidence rule. *See* TEX. ALCO. BEV.CODE ANN. § 11.67(b) (Vernon 1995). The party contesting the administrative agency's order has the burden to prove that the findings, inferences, conclusions, and decisions of the agency are not supported by substantial evidence. *See Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex.1984). The reviewing court evaluates the reasonableness of the order and not the correctness of the order. *See City of El Paso v. Public Util. Comm'n of Texas*, 883 S.W.2d 179, 185 (Tex.1994). The court may not substitute its judgment for the judgment of the state agency on the weight of the evidence. *Id.;* TEX. GOV'T CODE ANN. § 2001.174 (Vernon 1999). The reviewing court may reverse or remand the case if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* § 2001.174(2). Substantial evidence is more than a scintilla, but "the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Charter Medical,* 665 S.W.2d at 452. The court must uphold the agency decision if reasonable minds could have reached the conclusion of the agency. *Id.* at 453. Agency decisions that are not supported by substantial evidence are arbitrary and capricious. *Id.* at 454.

Section 11.61(b)(7) allows cancellation of a liquor permit if the permittee conducts business in a manner contrary to the general welfare, health, peace, morals, and safety of the people and the public sense of decency. TEX. ALCO. BEV.CODE ANN. § 11.61(b)(7) (Vernon Supp.1998). Cancellation is also warranted if the permittee maintains a noisy, lewd, disorderly, or unsanitary establishment. *Id.* § 11.61(b)(9). Permittee "means a person who is the holder of a permit provided for in this code, or an agent, servant, or employee of that person." *Id.* § 1.04(11) (Vernon 1995).

The TABC order identifies four violations that support cancellation of Top of the Strip's mixed beverage permits. Having reviewed the record from the administrative hearing, we find that substantial evidence exists to support the TABC's order.

### Underage dancer

 On September 17, 1995, TABC undercover agent Joseph Reilly went to Top of the Strip based on an informant's tip that there was an underage dancer. According to Reilly, Agent Hodges received information that a minor was dancing at the club. Reilly entered Top of the Strip and found the young girl dancing topless on the stage. William Kohn represented himself as the person in charge of the club and Reilly identified himself as a TABC agent.[4] Reilly asked Kohn about the

---

4. According to the record, Kohn was a neighbor of Dwayne Morris, who owned Top of the Strip. Morris was at home suffering from a bad back and he had sent Kohn to pick up the money from the club.

young dancer and found out her name. According to Reilly, Agent Hodges determined that the girl was fifteen and arrested Kohn for employment harmful to a minor. Reilly testified that the underage dancer told him that she had just started working at Top of the Strip that day.

Top of the Strip contends that the TABC failed to present any direct evidence of the dancer's age or the true nature of her employment. According to Reilly, Agent Hodges might have seen an employment application for the dancer or a piece of paper that represented her age. However, Top of the Strip did not contest the fact that the dancer was underage. Dwayne Morris, the club owner, testified that a disc jockey allowed the minor to dance and that she was not an employee. According to Morris, the disc jockey did not have authority to hire anybody. Further, Downa Rampy, the club's accountant, testified that she did not receive any employment records for the dancer. Top of the Strip takes issue with the fact that the underage dancer was not arrested but instead was taken to her father's house.

It is a criminal offense to employ, authorize, or induce a minor to work in a sexually oriented commercial activity. *See* Tex. Pen.Code Ann. § 43.251(b) (Vernon 1994). Top of the Strip blames the disc jockey but employees of the permittee must also comply with the Alcoholic Beverage Code. Reasonable minds could have concluded that Top of the Strip authorized a minor to dance topless. Therefore, the finding was supported by substantial evidence.

### Solicitation

On December 12, 1995, SAPD narcotics Detectives Mike Hollar, Gary Smith, and Anthony Linson visited Top of the Strip. The detectives were working undercover in an attempt to purchase narcotics. According to Hollar, a dancer approached the men and said that she would perform a table dance if the men bought her three drinks. The dancer stated that the drink purchase was "house policy."

According to Hollar, the dancer said that she would perform oral sex for forty dollars and would meet him after the club closed. Detective Hollar knew the dancer as "Golden" but later obtained her real name. Hollar explained that he did not arrest her for solicitation because he did not want to compromise his undercover status. The next night Hollar returned to identify the dancer to vice detectives as the dancer that solicited sex. Charges were never filed against the dancer for solicitation. Detective Linson testified that he was solicited for drinks by some of the dancers. Linson testified that he overheard the dancer's solicitation of Hollar. According to Linson, Hollar asked the dancer if she knew where he could get some sex and she said something like "if you got the money, I got the time."

Top of the Strip argues that TABC did not charge it with solicitation of drinks. At the hearing, the assistant attorney general told Linson "we have not charged them by solicitation of drinks by any employees today so I am going to ask you to limit your testimony to what happened with Mr. Hollar." However, the proposal for decision includes the violation of solicitation for drinks. In finding of fact number seven and conclusion of law number six, the administrative law judge found that the dancer solicited drinks and violated the Alcoholic Beverage Code. Even if the solicitation of drinks finding was improper, substantial evidence of one violation is sufficient to cancel a mixed beverage permit.

Top of the Strip contends that Linson's testimony shows that Hollar brought up the issue of obtaining sex and received an ambiguous answer. Regardless of who initiated the conversation, the dancer indicated that she would perform sexual acts for a fee. Substantial evidence exists to support the finding of solicitation of sex.

### Underage drinker

Vice Detective Robles testified that he was at Top of the Strip on May 22,

1997 to keep an eye on some suspected drug dealers when he spotted a young male consuming a beer. Robles's partner, Detective Lopez, brought the young man outside. The detectives asked the man to produce some identification and Robles testified that he was not sure whether the man showed them his driver's license or admitted that he was under 21. Robles testified that he believed the man was twenty years old and was issued citations for minor in possession and minor consuming.

Top of the Strip argues that no evidence was presented that anyone employed at the club knew the man was underage. Employees of Top of the Strip testified that all patrons are carded by door girls before they enter the club. According to testimony, minors using fake ID's are refused admission. Bartenders and waitresses are required to take TABC courses which address the prohibition of serving minors. Top of the Strip alleges that TABC produced no proof that the club intentionally, willfully or knowingly served a minor.

A permit may be canceled if it is found that a permittee with criminal negligence sold, dispensed, or delivered an alcoholic beverage to a minor or permitted a minor to consume or possess alcohol on the licensed premises. TEX. ALCO. BEV.CODE ANN. § 106.13(a) (Vernon Supp.1998). A person acts with criminal negligence if the person acts with a mental state that would constitute criminal negligence under Chapter 6 of the Penal Code. *Id.* § 1.08 (Vernon 1995). A person is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct, when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PEN.CODE ANN. § 6.03(d) (Vernon 1994). Thus, Top of the Strip did not have to know that the customer was a minor to violate the Alcoholic Beverage Code. In the proposal for decision, the administrative law judge found that the

employees, agents, and servants of Top of the Strip ought to have been aware of the substantial and unjustifiable risk that the customer was a minor based on his youthful appearance. The officer's testimony provides more than a scintilla of evidence that Top of the Strip ought to have been aware of the substantial and unjustifiable risk that the customer was a minor. Substantial evidence exists to support the finding that an underage customer was served alcohol.

### Marijuana

■ Officer Villarreal testified that he was dispatched to Top of the Strip on May 22, 1997 to search the premises for narcotics with the drug dog "Jessie." According to Villarreal, Jessie went to a pair of pants in the dancer's dressing room. The dog sat next to the pants which indicated that he had smelled the odor of narcotics. Villarreal testified that he found a baggy containing a few grams of marijuana in the pocket of the pants. Villarreal testified that he recognized marijuana based on experience. According to Villarreal, the substance looked and smelled like marijuana. On cross-examination, Villarreal testified that he did not take possession of the marijuana and the substance was never tested.

After the dog left, officers told employees at Top of the Strip that everything was okay. Employees testified that Top of the Strip posted large signs in the dressing rooms and restrooms indicating that anyone caught with narcotics would be fired. All employees signed rules which stated that no drugs could be brought onto the premises. Further, Top of the Strip contends that the administrative law judge failed to qualify Officer Villarreal as an expert in drug detection. Villarreal testified that he had been assigned to the canine unit for eight years and had worked with Jessie for four years. He also explained that he and Jessie attended a training academy and were certified. Top of the Strip also contends that TABC was

attempting to qualify Jessie as an expert. Further, Top of the Strip argues that the police never identified the substance or tried to determine the owner of the pants. We acknowledge that testing of the substance would have provided stronger evidence that the substance was marijuana. However, the testimony of Officer Villarreal provided more than a scintilla of evidence about the nature of the substance which need not be proven by a preponderance of the evidence. Further, substantial evidence of one violation is sufficient to cancel a mixed beverage permit. We find that reasonable minds could have reached the conclusion that the substance was marijuana.

We find substantial evidence exists to support the findings. We sustain TABC's second issue.

### Arbitrary and Capricious

■ In the third issue, TABC argues that the order was not arbitrary and capricious. An order supported by substantial evidence can still be arbitrary and capricious if the agency failed to consider a factor the legislature directed it to consider, considered an irrelevant factor, or reached an unreasonable result. *See City of El Paso*, 883 S.W.2d at 184.

■ Top of the Strip takes issue with the fact that two of the violations, the underage dancer and the solicitation, took place in 1995 and its mixed beverage permits had been renewed in 1996.[5] However, the Alcoholic Beverage Code does not prohibit the use of violations occurring prior to a renewal as support for cancellation. Top of the Strip contends that the presentation of evidence concerning narcotics was such a stretch as to be arbitrary and capricious because the substance was never tested and well-established evidentiary rules regarding the testimony of expert witnesses were disregarded. Further, Top

of the Strip contends that pursuing the solicitation of drinks violation was arbitrary and capricious in light of the TABC's comment that they were not pursuing that violation. Further, Top of the Strip contends that TABC offered no proof of the age of the underage dancer or the age and identity of the underage drinker. However, witnesses testified that the underage dancer was fifteen and the underage drinker was twenty.

Top of the Strip argues that TABC made no attempt to show that Top of the Strip's owners or agents were aware of any violations, could have known of any violations, or were negligent in not discovering the violations. Top of the Strip contends that holding them strictly liable for the violations was arbitrary and capricious. Although Top of the Strip does not cite this provision, the Alcoholic Beverage Code provides that the TABC may relax any provision of the code relating to cancellation of the permit if: (1) the violation could not have reasonably been prevented by the permittee by the exercise of due diligence; (2) the permittee was entrapped; (3) an agent, servant, or employee of the permittee violated this code without the knowledge of the permittee; (4) the permittee did not knowingly violate this code; or (5) the violation was a technical one. Tex. Alco. Bev.Code Ann. § 11.64(b)–(c) (Vernon 1995). The operative phrase is *may* relax the provisions of the code. Thus, it need not be proven that the permittee knowingly violated the code but TABC has the discretion to fine the permittee for an unknowing violation of the code.

We do not find that the TABC failed to consider a factor, considered an irrelevant factor or reached an unreasonable result. Therefore, we find that the order was not arbitrary and capricious. We sustain TABC's third issue.

---

5. Top of the Strip asserted res judicata at the agency level because its permits had been renewed after the incidents in 1995. However, the administrative law judge found that there was no hearing at which the parties thoroughly and fairly litigated the 1995 violations.

**Conclusion**

Having found that the order was supported by substantial evidence and was not arbitrary and capricious, we reverse the trial court's judgment and reinstate the TABC's order canceling Top of the Strip's mixed beverage and late night mixed beverage permits.