COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-150-CV

 

 

I GOTCHA, INC.,                                                                 APPELLANT



D/B/A
ILLUSIONS

                                                   V.

 

TEXAS ALCOHOLIC                                                                APPELLEE

BEVERAGE
COMMISSION

                                              ------------

 

           FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

In two issues, appellant I
Gotcha, Inc. d/b/a Illusions (Illusions) appeals from the trial court=s final judgment affirming appellee Texas Alcoholic Beverage
Commission=s (TABC)
imposition of a $13,500 civil penalty for violations of the Texas Alcoholic
Beverage Code (the ACode@).  We affirm.








II.  Background

Illusions, a topless bar in
Fort Worth, is the holder of a mixed beverage permit and a mixed beverage late
hours permit issued by TABC.  These
permits were originally issued by TABC on December 16, 1983, and have been
continually renewed. 

On February 12, 2005,
Taquisha Lawson was working as a dancer at Illusions under the stage name ASassy.@  On that date, at about 9:00 p.m., TABC agents
Brian Miers and Ralph May entered the premises in an undercover capacity and
sat at a table in an open area of the club near the stage.








While seated, Miers and May
were approached by Lawson, who joined them at the table and inquired as to why
Miers and May were at Illusions that night. 
Miers responded that they were Alooking for some kind of an after party.@  Lawson and Miers then engaged
in a conversation wherein Lawson told Miers that she was getting off work at
2:00 a.m, Miers told Lawson that he and May had a hotel room in town, and Miers
invited Lawson to their hotel room after she got off work.  Lawson told Miers it would cost him $400 an
hour for both Miers and May, but that she would Agive them all the . . . they could handle.@[2]  In Lawson=s presence, Miers leaned over to May and relayed the details of the
conversation; all three nodded their heads in agreement.  Thereafter, Miers told Lawson that he and May
were leaving to meet up with some friends, but that someone would be back to
pick her up.  Lawson told the agents that
if they did not return to pick her up, they Awould miss out on one good [thing].@

Immediately thereafter, Miers
and May left Illusions and contacted their arrest team.  Miers detailed the evidence supporting a
prostitution charge against Lawson and provided a description of Lawson=s appearance, including skin color, hair style, clothing, and
identifying jewelry.  The arrest team
entered Illusions, obtained a digital photograph of Lawson, and returned to
Miers to confirm through picture identification that they had located the right
individual.  The arrest team then
arrested Lawson for solicitation.  

On December 15, 2005, the
TABC issued Illusions a notice of hearing charging,

The place or manner in which
[Illusions] conducts its business warrants the cancellation or suspension of
the permit and/or license based on the general welfare, health, peace, morals
and safety of the people and on the public sense of decency in violation of '' 11.61(b)(7) and/or 61.71(a)(17) [of the Code].

The notice alleged that 








On or
about February 12, 2005, [Illusions] and/or its agent, servant, employee,
Taquisha Lawson, and/or some other person, on the licensed premises, offered to
engage or agreed to engage in sexual conduct for a fee in violation of ' 43.02(a)(1)
of the Texas Penal Code and/or ' 104.01(7) of the Texas
Alcoholic Beverage Code and/or ' 35.31(a)(b)(1)(c)(12)
of the Texas Alcoholic Beverage Commission Rules.  

 

On May 8, 2006, an
administrative law judge at the State Office of Administrative Hearings (the AALJ@) held a
hearing at which Miers and Illusions=s owner, Walt Duncan, testified. 
Lawson was not cited and did not appear at the hearing.  Documentary evidence of Illusions=s Code violation history and its independent investigation into the
incident was introduced.   

Approximately two months
later, on July 10, 2006, the ALJ issued a proposal for decision, concluding in
relevant part that A[Illusions=s] employee, on the licensed premises, offered and agreed to engage in
sexual conduct for a fee, in violation of [sections 11.61(b)(7) and 104.01(7)
of the Code].@  The ALJ recommended a sixty day suspension of
Illusions=s permits
or, in lieu of suspension, a $13,500 civil penalty.  Subsequently, on October 30, 2006, TABC
issued a final order adopting the ALJ=s July 10, 2006 proposal and ordered Illusions=s permits suspended for a period of sixty days beginning on January 3,
2007, unless Illusions paid a $13,500 civil penalty to TABC on or before 12:01
a.m. on December 27, 2006. 








Thereafter, Illusions filed
all necessary notices and requests for reconsideration and a petition for
judicial review. [AE x] The trial court conducted a hearing on Illusions=s petition for review and on April 5, 2007, signed an order affirming
TABC=s October 30, 2006 final order. 
This appeal followed.  

III.  Standard of Review

We review an administrative
ruling of the TABC under the substantial evidence rule.[3]  Generally speaking, a court reviewing an
administrative action under the substantial evidence rule is only concerned
with the reasonableness of the administrative order, not with its correctness.[4]  An administrative decision is reasonably
supported by substantial evidence if the evidence as a whole is such that
reasonable minds could have reached the same conclusion that the agency
reached.[5]  The rule is designed to discourage courts
from administering regulatory statutes enacted by the legislature.[6]  








A court may not invade the
fact finding authority of an administrative agency.[7]  Nor may a court substitute its judgment for
the agency=s on the
weight of the evidence on questions committed to agency discretion.[8]  A reviewing court may only determine whether
the contested order is reasonably supported by substantial evidence.[9]

An agency=s action will be sustained if the evidence is such that reasonable
minds could have reached the conclusion the agency must have reached in order
to justify its action.[10]  








An agency=s findings and conclusions are presumed to be supported by substantial
evidence, and the burden is on the opponent to prove otherwise by showing that
no substantial evidence existed at the time of the hearing to support the
order.[11]  Finally, we must uphold the agency=s decision even if the evidence actually preponderates against the
agency=s finding so long as enough evidence suggests the agency=s determination was within the bounds of reasonableness.[12]

IV.  Substantial Evidence

In its first issue, Illusions
asserts that the trial court erred in sustaining the ALJ=s finding that Illusions violated sections 11.61(b)(7) and 104.01(7)
of the Code.  Specifically, Illusions
contends that there was no substantial evidence to support a finding that
Lawson was an employee of Illusions, that Lawson solicited Miers and May, or
that the place or manner in which Illusions conducts its business warranted
suspension of its permits.  

In order to prevail on its
complaint, TABC had to establish by substantial evidence that Illusions
violated sections 11.61(b)(7) and 104.01(7) of the Code.  Those sections provide as follows:

' 11.61.    Cancellation or Suspension of Permit

 . . . .        

(b)  The commission or administrator may suspend
for not more than 60 days or cancel an original or renewal permit if it is
found, after notice and hearing, that any of the following is true:

 

. . . .








(7)
the place or manner in which the permittee conducts his business warrants the
cancellation or suspension of the permit based on the general welfare, health,
peace, morals, and safety of the people and on the public sense of decency.[13]

 

' 104.01.  Lewd, Immoral,
Indecent Conduct

No
person authorized to sell beer at retail, nor his agent, servant, or employee,
may engage in or permit conduct on the premises of the retailer which is lewd,
immoral, or offensive to public decency, including, but not limited to, any of
the following acts:

 

. . .

 

(7)
permitting solicitations of persons for immoral or sexual purposes.[14]

 

A.  AEmployee@

Illusions contends that the
substantial evidence does not support a finding that Lawson was an employee of
Illusions.  Illusions asserts that Lawson
was an independent contractor.  








The primary distinction
between an independent contractor and an employee is that the independent
contractor merely agrees to accomplish results, whereas an employee yields
control over his or her time and physical activities to the employer.[15]  The term Aemployee@ is not
defined in the Code.  Therefore, we apply
its ordinary meaning in our analysis.[16]  

Employees are ordinarily
defined as a person in the service of another under a contract of hire, express
or implied, oral or written, whereby the employer has the right to direct the
means or details of the work and not merely the result to be accomplished.[17]  While the employer=s Acontrol@ is the most important feature of an employment relationship, Texas
courts have found several related factors to be helpful in distinguishing
employees from independent contractors, including  (1) the independent nature of the worker=s business; (2) the worker=s obligation to furnish necessary tools, supplies and material; (3)
the hiring party=s right to
control the progress of the work; (4) the length in time of the employment; and
(5) the method of payment.[18]













At the hearing before the
ALJ, the parties introduced the following evidence: (1) dancers at Illusions
must fill out paperwork and provide Illusions with, among other things, their
name, stage name, address, telephone number, and social security number; (2)
dancers are given a Arule book@ that they must read and sign; (3) dancers are briefed by Illusions=s management as to the club rules that they are expected to follow;
(4) Illusions does not provide weekly work schedulesCthe dancers just Ashow up@; (5) some
of the dancers are transient and not around very long; (6) Illusions may Aswap@ dancers
among its clubs on any given night to ensure that there are enough dancers at
each club; (7) dancers sign in on a door sheet; (8) dancers are required to pay
a $10 stage fee each night they perform; (9) dancers request music from the
disc jockey; (10) Illusions directs how the dancers rotate around the stage and
how many songs the dancers perform at each pole on the stage; (11) Illusions=s Ahouse mom@ provides assistance with hair and makeup, snacks, and clothing as needed,
and she guards the dancers= money when they are not around; (12) the only compensation dancers
receive from Illusions is a commission for drinks sold at the club, and their
compensation is primarily derived from tips they receive from customers; and
(13) Illusions does not file tax statements on the dancers.     Reviewing
this evidence in light of the factors listed above, we conclude that there is
substantial evidence to support the ALJ=s conclusion that Illusions exercised sufficient control over Lawson=s dancing activities to make her an employee of Illusions on the night
in question.[19]


B.  Interested Witness Testimony

Illusions further contends
that the ALJ=s ruling is
not supported by substantial evidence because the only evidence that Lawson
solicited Miers and May is testimony from an interested witness.  In order for the testimony of an interested
witness to establish a fact, as a matter of law, it must be Aclear, direct and positive,@ with Ano
circumstances in evidence tending to discredit or impeach such testimony.@[20]








Meirs was the only witness to
testify concerning the events forming the basis of TABC=s complaint.  He testified that
Lawson voluntarily approached him and May, talked directly to him, agreed to go
to a hotel room with him and May when she got off work at 2:00 a.m., and told
him it would cost $400 an hour for both him and May, that she would Agive them all the . . . they could handle,@ and, that if they did not come back to get her, they Awould miss out on one good [thing].@  Meirs further testified that
he related this information to May in Lawson=s presence and that the three of them nodded their heads in agreement.
  In a contested case hearing, the administrative
law judge, as the finder of fact, is the sole judge of the witness=s credibility and is free to accept or reject the testimony of any
witness or even accept Apart of the
testimony of one witness and disregard the remainder.@[21]  A reviewing court is not
permitted to substitute its judgment for the administrative law judge=s regarding the credibility of witnesses and must resolve evidentiary
ambiguities in favor of the administrative order with a finding of substantial
evidence to support the administrative law judge=s decision.[22]








Upon conducting a thorough
review of the record, we find no evidence tending to discredit Miers=s testimony concerning the events that took place between Miers and
May, and Lawson inside Illusions on the night of February 12, 2005.  Miers=s testimony is clear, direct, and positive.  Accordingly, the ALJ could properly consider
Miers=s testimony in finding that Lawson had solicited Miers and May for
sexual purposes.[23]

C.  Place or Manner Violations        

Illusions also contends that
the one incident on which TABC=s claim is based is insufficient to support a finding that the place
or manner in which Illusions operates its business jeopardizes the people=s general welfare, health, peace, morals, or sense of public decency.[24]   








Whether a permittee conducts
its business so as to jeopardize the people=s general welfare, health, peace, morals or sense of public decency
cannot be determined by a set formula.[25]  The agency has great discretion in making
this determination, and we will not disturb it unless it is apparent that the
agency acted arbitrarily and unreasonably.[26]  We will uphold this conclusion of law if it
is supported by substantial evidence.[27]

The substantial evidence
shows that Lawson did solicit Miers and May for sexual purposes in violation of
sections 11.61(b)(7) and 104.01(7) of the Code.[28]  In addition, TABC introduced Illusions=s permit violation history that demonstrated that Illusions had been
cited four previous times for Code violations.[29]  








Applying the requisite
deferential standard, we cannot say that the ALJ=s conclusion that the place or manner in which Illusions conducted its
business was contrary to the people=s general welfare, health, peace, morals, safety and sense of public
decency was unreasonable.  

Having concluded that there
is substantial evidence to support the ALJ=s finding that Illusions violated sections 11.61(b)(7) and 104.01(7)
of the Code, we overrule Illusions=s first issue. 

V.  Section 11.64(b)

Illusions next asserts that
by imposing a civil penalty pursuant to section 11.64, the ALJ should have
considered mitigating factors and applied section 11.64(b) of the Code to Arelax@ the penalty
assessed.[30]  








In determining the amount of
a penalty assessed in lieu of suspension or cancellation of a permit, the
agency must consider the type of permit held, the type of violation, any
aggravating or ameliorating circumstances concerning the violation, including
those enumerated by statute, and the permittee=s previous violations.[31]  The penalty cannot be based on the volume of
alcoholic beverages sold, the business receipts, taxes paid, or the financial
condition of the permittee.[32]  The penalty cannot be less than $150 or more
than $25,000 for each day the permit was to have been suspended.[33]  An agency has broad discretion in determining
which sanction best serves the statutory policies committed to the agency=s oversight.[34]  An agency=s decision in determining the appropriate penalty will not be reversed
unless an abuse of discretion is shown.[35]  

Section 11.64(b) provides
that the agency may relax any provision of the Code relating to suspension of
the permit if an employee of the permittee violated the Code without the
knowledge of the permittee, the permittee did not knowingly violate the Code,
or the violation could not reasonably have been prevented.[36]
However, this provision is discretionary.[37]  








The penalty imposed by the
ALJ was within the statutory guidelines. 
The ALJ did not abuse her discretion in refusing to relax the penalty
under section 11.64(b) of the Code.  We
overrule Illusions=s second
issue.  

VI.  Conclusion

Having overruled Illusions=s two issues on appeal, we affirm the trial court=s judgment affirming the TABC=s October 30, 2006 final order. 
  

 

PER CURIAM

 

PANEL
A:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DELIVERED:  July 31, 2008   
                       











[1]Tex. R. App. P. 47.4.





[2]In
order not to offend the reader, we have left out the explicit language  Lawson allegedly used.





[3]See Tex. Alco. Bev. Code Ann. ' 11.67(b)(Vernon 2007); Tex. Gov=t Code Ann ' 2001.175
(Vernon 2000); see also Tex. Alcoholic Beverage Comm=n v.
Wishnow, 704 S.W.2d 425, 427 (Tex. App.CHouston [14th
Dist.] 1985, no writ).  





[4]See
Tex. Health Facilities Comm=n v. Charter Med.-Dallas,
Inc., 665 S.W.2d 446, 452 (Tex. 1984)(citing Gerst v. Nixon, 411
S.W.2d 350, 354 (Tex. 1966)); Cent. Power & Light v. Public Util. Comm=n, 36
S.W.3d 547, 561 (Tex. App.CAustin 2000, pet. denied).





[5]Tex.
State Bd. of Med. Examiners v. Birenbaum, 891 S.W.2d 333, 337
(Tex. Civ. App.CAustin
1995, writ denied).





[6]Lewis
v. Metropolitan S. & L. Ass=n, 550
S.W.2d 11, 13 (Tex. 1977).





[7]State
Banking Bd. v. Allied Bank Marble Falls, 748 S.W.2d 447, 448
(Tex. 1988). 





[8]See Tex. Gov=t Code Ann. ' 2001.174 (Vernon 2000);
see also Auto Convoy Co. v. R.R. Comm=n of
Tex., 507 S.W.2d 718, 722 (Tex. 1974). 






[9]Auto
Convoy Co., 507 S.W.2d at 722.





[10]Suburban
Util. Corp. v. Pub. Util. Comm=n of Tex., 652
S.W.2d 358, 364 (Tex. 1983).





[11]Imperial
Am. Res. Fund v. R.R. Comm=n of Tex., 557
S.W.2d 280, 286 (Tex. 1977).  





[12]Gerst
v. Goldsbury, 434 S.W.2d 665, 667 (Tex. 1968); see also Sw.
Pub. Serv. v. Pub. Util. Comm=n of Tex., 962
S.W.2d 207, 215 (Tex. App.CAustin 1998, pet. denied).





[13]Tex. Alco. Bev. Code Ann. ' 11.61(b)(7)
(Vernon 2007).





[14]Id. at ' 104.01(7)
(Vernon 2007).





[15]41
Am. Jur. 2d Independent Contractors
'' 1B23
(2008).





[16]See Tex. Gov=t Code Ann. ' 312.002 (Vernon 2005).





[17]See
Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 279 (Tex.
1990); Farrell v. Greater Houston Transp. Co., 908 S.W.2d 1, 3 (Tex.
App.CHouston
[1st Dist.] 1995, writ denied); Travelers Ins. Co. v. Ray, 262
S.W.2d 801, 803 (Tex. Civ. App.CEastland 1953, writ ref=d). 





[18]Ross
v. Tex. One P=ship,
796 S.W.2d 206, 210 (Tex. App.CDallas 1990, no writ); Sherard
v. Smith, 778 S.W.2d 546, 548 (Tex. App.CCorpus Christi 1989, writ
denied); Wasson v. Stracener, 786 S.W.2d 414, 420 (Tex. App.CTexarkana
1990, writ denied).  





[19]See
Vela v. State, 776 S.W.2d 721, 724B25
(Tex. App.CCorpus
Christi 1989, no pet.)(holding dancer was employee when dancer worked nights,
entered club through dressing room, and danced on stage several times); Bruce
v. State, 743 S.W.2d 314, 315B16 (Tex. App.CHouston
[14th Dist.] 1987, no pet.)(holding dancer employee when dancer
filled out application and had to get permission before performing, club=s
disc jockey called dancer to stage to perform, club provided dressing room
closed off from club patrons, and dancer received a commission from drinks sold
at club); but cf. Reich v. Circle C. Inv., Inc., 998 F.2d 324, 327 (5th
Cir. 1993)(focusing on the Aeconomic reality@ and
considering the degree of control exercised by the club, the extent of the
relative investments, the degree to which the dancer=s
opportunity for profit or loss was determined by the club, the skill and
initiative required in performing the job, and the permanency of the
relationship).





[20]Swilley
v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972); see also Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47
(Tex. 1965); Cochran v. Wool Growers Cent. Storage Co., 140 Tex. 184,
191, 166 S.W.2d 904, 908 (Tex. 1942).  





[21]S.
Union Gas Co. v. R.R. Comm=n of Tex., 692
S.W.2d 137, 141B42
(Tex. App.CAustin
1985, writ ref=d
n.r.e).





[22]Ford
Motor Co., v. Tex. Dep=t of Transp., 936
S.W.2d 427, 429B30
(Tex. App.CAustin
1996, no writ).





[23]See
Great Am. Reserve, 391 S.W.2d at 47; Cochran, 166 S.W.2d at
908; see also Swilley, 488 S.W.2d at 67.





[24]Illusions
asserts without argument or authority that sworn testimony of a pattern must be
established to support a place or manner violation.  We have found no authorityCstatutory,
case law, or otherwiseC
requiring that a pattern be established to support a place or manner
violation.  But see Tex. Alcoholic
Beverage Comm=n v.
I Gotcha Inc., 2006 WL 2095449, at * 2, 4 (Tex. App.C
Amarillo July 28, 2006, pet. denied)(memo op.)(finding substantial evidence to
support ALJ=s
findings and conclusions of a Apattern of inappropriate
conduct@).  





[25]Four
Stars Food Mart, Inc. v. Tex. Alcoholic Beverage Comm=n, 923
S.W.2d 266, 272 (Tex. App.CFort Worth 1996, no writ); Ex
parte Velasco, 225 S.W.2d 921, 923 (Tex. Civ. App.CEastland
1949, no writ). 





[26]Four
Stars, 923 S.W.2d at 272; Velasco, 225 S.W.2d at 923.  





[27]Four
Stars, 923 S.W.2d at 272.





[28]See
supra Part IV. B.





[29]One
of the violations concerned a breach of the peace contrary to Code sections
28.11 and 11.61(b)(2).  The trial court
reversed this violation because it was not supported by substantial evidence.  The charge in that matter did not charge the
club with a violation, but only the dancers involved.  The record does not reveal the nature of the
remaining three violations.  At the time
of the hearing, Illusions had accepted and paid the civil penalty on one, the
trial court had remanded one to TABC for further consideration, and one was on
appeal. 





[30]See Tex. Alco. Bev. Code ' 11.64(b)
(Vernon 2007) (providing that under certain statutory circumstances set forth
therein, there is discretion to Arelax any provision of the
code relating to the suspension or cancellation of the permit or license@ and
assess a just sanction, or reinstate the permit or license during the
suspension period upon payment of a fee of Anot less than $75 nor more
than $500@).  





[31]See
id. ' 11.641(a),
(c) (Vernon 2007).





[32]Id. ' 11.641(b).





[33]Tex. Alco. Bev. Code Ann. ' 11.64(a).





[34]Fay-Ray
Corp. v. Tex. Alcoholic Beverage Comm=n, 959
S.W.2d 362, 369 (Tex. App.CAustin 1998, no pet.).





[35]Id.





[36]Tex. Alco. Bev. Code ' 11.64
(b)-(c).





[37]Allen-Burch,
Inc. v. Tex. Alcoholic Beverage Comm=n, 104
S.W.3d 345, 352 (Tex. App.CDallas 2003, no pet.)
(recognizing provision discretionary); Tex. Alcoholic Beverage Comm=n v.
Top of the Strip, Inc., 993 S.W.2d 242, 252 (Tex. App.CAustin
1998, pet. denied)(AThe
operative phrase is may relax the provisions of the code.@)(emphasis
in original).